UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DANIEL R. ODDO                                                    PLAINTIFF

VERSUS                          NO. 1:09-CV-00323-LG-RHW

COMMISSIONER OF SOCIAL SECURITY                      DEFENDANT

## PROPOSED FINDINGS OF FACT AND RECOMMENDATION

### Procedural History

On November 9, 2004, Daniel R. Oddo (Claimant) filed an application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to Titles II and XVI of the Social Security Act. Claimant alleged onset of disability by multi-level spinal disorder and additional impairments beginning on June 6, 2003. The Social Security Administration (SSA) denied the initial application and Claimant's request for reconsideration. Claimant timely filed a request for an administrative hearing, which was held on August 22, 2005. On October 27, 2005, the Administrative Law Judge (ALJ) ruled that Claimant was not disabled within the meaning of the Social Security Act. (Tr. 44-49). Claimant applied to the Appeals Council, which vacated the decision, remanding the matter for further proceedings. (Tr. 93–95). Upon remand, the ALJ held a second hearing, and sent interrogatories to be completed by a Vocational Expert. (Tr. 137–45, 392-429). In August 2007, the ALJ again ruled that Claimant was not disabled under the Social Security Act. The Appeals Council denied Claimant's application for review, and the ALJ's decision became final. (Tr. 7–9).

Pursuant to 42 U.S.C. § 405(g), Claimant seeks judicial review of the Commissioner's denial of Claimant's application for period of disability, DIB, and SSI. Claimant further requests the ALJ's decision be reversed or remanded for further proceedings, and argues that the ALJ

made errors of fact and law, and that his decision was not based on "substantial evidence."

## Factual Background

Claimant asserts that he has been disabled since June 6, 2003, due to multi-level spinal disorder and additional impairments. He was forty-three years old at the time of the onset, and was forty-seven years old at the time of the ALJ's August 2007 ruling. According to the record, Claimant maintained past relevant employment as a shipfitter until March 2003, when he was laid off from this job. (Tr. 222–26, 419). The ALJ found that Claimant had not engaged in substantial gainful employment since the alleged onset, and that Claimant retained a third-grade level education, rendering him functionally illiterate.

The record shows that Claimant sought medical treatment at Memorial Hospital at Gulfport and Hancock Medical Center on two separate occasions prior to June 6, 2003. Diagnostic imaging performed during these visits ultimately revealed multilevel disc and degenerative disease, including three disc protrusions. (Tr. 16, 328). Claimant had additional x-rays taken at Hancock Medical Center in September 2003. Claimant also visited Coastal Family Health Center in September 2003, complaining of hand numbness. In December 2003, Claimant had x-rays taken at Hancock Medical Center following a motor vehicle accident.

Dr. Warren Wright also examined Claimant in December 2003, diagnosing him with degenerative disc disease. (Tr. 319). In February 2005, Claimant visited Dr. Wright for a second examination, reporting increased numbness and no improvement in neck pain. (Tr. 346). Dr. Wright found Claimant unable to perform many of the tasks as he had previously done, and diagnosed him with osteoarthritis of the cervical and lumbar spine. (Tr. 347).

In March 2005, a state agency physician completed a Physical Residual Functional

Assessment based on information contained in Claimant's record. In the Assessment, the physician indicated that Claimant could lift and carry fifty pounds occasionally and twenty-five pounds frequently, stand and walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and do unlimited pushing and pulling. (Tr. 349). The document also shows that Claimant may climb, stoop, kneel, crouch, and crawl only occasionally, but may balance frequently. (Tr. 350). The assessment notes that the agency physician consulted x-rays and MRI scans in the record, as well as Dr. Wright's previous examination report. The agency physician's assessment also reflects his opinion that Claimant's allegations were disproportionate to the medical findings. (Tr. 353).

In July 2005, Claimant again presented to the emergency room at Hancock Medical Center with lower back and hip pain. (Tr. 364). The hospital physicians examined Claimant, and prescribed pain medication. (Tr. 362, 364).

In August 2005, Dr. Bertin C. Chevis examined Claimant, completing a Medical Source Statement of Ability to Do Work-Related Activities (Physical). This form indicates Dr. Chevis' opinion that Claimant could lift and carry less than ten pounds, stand and walk for less than two hours in an eight-hour workday, sit for less than six hours in an eight-hour workday, and do only limited pushing and pulling. (Tr. 357–58). The report indicates that Claimant should never climb, crouch, or crawl, and should only balance, kneel, or stoop occasionally. (Tr. 358). Dr. Chevis' opinion also states that Claimant's symptoms are indicative of a spinal disorder, including compromise of a nerve root or spinal cord and evidence of nerve root compression. (Tr. 356).

Claimant visited Family Health Clinic in October 2005, and was prescribed pain

3

medication. (Tr. 369). From September through December 2006, Claimant was incarcerated, and requested pain medication during this period. (Tr. 157–59). Claimant visited Coastal Family Health Center in March 2008, and the examining physician noted that Claimant ambulated slowly and stiffly. (Tr. 376). In March 2007, Dr. Chevis Dr. Chevis completed forms identical to those completed in 2005 regarding Claimant's impairment and residual functional capacity. (Tr. 147–151).

## Standard of Review

**A. Judicial Review**

The federal district court reviews the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). If the court determines the Commissioner's decision to be supported by substantial evidence, then the findings are conclusive and the court must affirm the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also* 42 U.S.C. § 405(g). This standard requires supporting evidence that is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court is not permitted to "reweigh the evidence in the record, nor try any issues *de novo*, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). "'Conflicts in the evidence are for the [Commissioner] and not the courts to resolve.'" *Brown*, 192 F.3d at 496 (quoting *Selders v.*

*Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).  While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are within a permissible meaning of the statutory or regulatory language.  *Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 843–44 (1984).

**B. Standard for Entitlement to Social Security Benefits**

A claimant bears the burden of proving the existence of a medically determinable impairment that has prevented the claimant from engaging in substantial gainful employment.  42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 423 (d)(5).  The Social Security Administration utilizes a five-step sequential process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520(a), § 404.920(a).  Under this analysis, the ALJ may decide a claimant is disabled if he finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a severe, medically determinable impairment; (3) the claimant's impairment meets or equals one of the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from performing any past relevant work; and (5) the impairment prevents the claimant's ability to adjust to performing any other work.  *Id.*

The claimant initially bears the burden of proving disability under the first four steps, but the burden shifts to the SSA for the fifth step.  *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987).  Therefore, if the claimant proves that he is unable to perform past relevant work, the SSA must demonstrate that the claimant can perform another occupation that exists in significant numbers in the national economy.  The burden then shifts back to the claimant to establish that he cannot perform this alternative employment.  *Chapparro*, 815 F.2d at 1010.

## The ALJ's Decision

In his August 2007 decision, the ALJ evaluated the evidence in Claimant's record using the SSA's five-step sequential process. At step one of the process, the ALJ found that Claimant had not engaged in substantial gainful activity since June 6, 2003, the alleged onset date. (Tr. 17). At step two, the ALJ found that Claimant had cervical and lumbar disc disease and a substance abuse disorder. (Tr. 17). At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19). At step four, the ALJ found that Claimant was unable to perform any past relevant work. At step five, the ALJ considered Claimant's age, education, work experience, and residual functional capacity, and determined that there are jobs that exist in significant numbers in the national economy that Claimant could perform. (Tr. 22.). Based on these findings, the ALJ concluded that Claimant had not been under a disability, as defined in the Social Security Act, from June 6, 2003 through the date of the decision. (Tr. 23).

## Law and Analysis

Oddo argues that the ALJ committed the following errors: (1) the ALJ's denial of benefits was not supported by substantial evidence; (2) the ALJ gave incorrect weight to physicians' reports and opinions; and (3) the ALJ did not evaluate sufficiently at step three whether Claimant's conditions of cervical and lumbar disk disease met the criteria of Listing 1.04.

Claimant asserts that the ALJ's conclusions depended on the erroneous rejection of the opinion of Claimant's physician, Dr. Chevis, in favor of the agency physician's opinion. In *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000), the Fifth Circuit stated that "[e]ven though the

6

opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, 'the ALJ has sole responsibility for determining a claimant's disability status.'" *Newton*, 209 F.3d at 455 (quoting *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)). Counsel for Claimant confirmed at the administrative hearing that Dr. Chevis was an examining and not a treating physician. (Tr. 429). Thus, the ALJ did not give "controlling weight" to Dr. Chevis' opinion; however, the record indicates that Dr. Chevis' opinion was considered within the entirety of the evidence relied upon in the decision. (Tr. 21).

The Court weighs objective medical facts, diagnoses and opinions of treating physicians, the claimant's subjective evidence of pain and disability, and the claimant's age, education and work history when considering whether an administrative decision is supported by substantial evidence. *Martinez*, 64 F.3d at 174. Where an ALJ shows good cause, he may "discount, or even disregard entirely, the opinion of the treating physician." *Brown*, 192 F.3d at 500. The ALJ concluded that Dr. Chevis' opinion was inconsistent with Dr. Wright's two examination reports and records from Claimant's multiple hospital visits. Specifically, these records did not show the degrees of limitation that were found by Dr. Chevis. (Tr. 21). Dr. Chevis' reports provide little information other than a checklist of symptoms and limitations. (Tr. 147, 356). For instance, Dr. Chevis' records contain no evidence that he reviewed any of Claimant's medical records or medical history in reaching his conclusions. *Id.* Nor do Dr. Chevis' records indicate what, if any, independent evaluations he performed.

In making his decision, the ALJ relied upon the agency physician's opinion and the findings of Dr. Wright. The ALJ determined that the agency physician's opinion was based upon Claimant's medical treatment records rather than subjective complaints, and should be afforded

7

greater weight. (Tr. 21). These records indicate that the agency physician reviewed Claimant's x-rays, MRI scans, and hospital records, as well as both of Dr. Wright's consultative examinations. (Tr. 349–350). Dr. Chevis was merely an examining physician with no treatment relationship. The ALJ considered and discussed factors relevant in evaluating the opinions of an examining physician, concluding that there was sufficient cause for discounting the weight of Dr. Chevis' medical statements. The undersigned finds that there is substantial evidence to support the ALJ's decision.

In a related matter, Claimant argues that the ALJ incorrectly concluded that there was "no evidence that Dr. Chevis has treated the claimant for more than the one time evaluation upon which his opinion is based." (Tr. 21). Claimant asserts that this error warrants remand. In fact, in his decision the ALJ acknowledged that Dr. Chevis provided two statements, dated respectively August 4, 2005 and March 19, 2007. *Id.* At the April 24, 2007, hearing, while questioning Claimant, counsel stated that Claimant had "seen Dr. Chevis, I know a couple of time[s], because he's done two reports." (Tr. 401). Then at the conclusion of the hearing, the ALJ clarified that Claimant had been to Dr. Chevis on two occasions for "evaluations" but that Dr. Chevis had not treated Claimant. (Tr. 428-29). Although there may be some inconsistency between the record and the ALJ's findings regarding the number of times Dr. Chevis evaluated Claimant, the conclusion that Dr. Chevis had not "treated" Claimant is undisputed.

The ALJ relied upon the agency physician's opinion regarding Claimant's Residual Functional Capacity report, finding this opinion to be the most dependable interpretation. This agency physician's opinion stated that the Claimant's allegations were disproportionate to the findings. (Tr. 353). The ALJ also looked to the interrogatory completed by Ronald Smith, a

8

vocational expert. From this interrogatory, the ALJ gave an adequate explanation as to his conclusion regarding Claimant's residual functional capacity, discussing evidence indicating Claimant would be able to perform jobs available in the national economy. (Tr. 23, 137–145). Therefore, the undersigned finds that there was substantial evidence in the record to support the ALJ's findings.

The ALJ's evaluation at step three of the analysis requires closer scrutiny. At step three, the ALJ found that Claimant had a severe impairment in the form of cervical and lumbar disc disease but that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Tr. 19, 48). The ALJ did not identify any specific impairment for which Claimant failed to qualify, nor did the ALJ provide any explicit support for the conclusion that Claimant's symptoms fail to meet a listed impairment.

The Social Security Act states:

> [t]he Commissioner of Social Security is directed to make any findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. Any such decision by the Commissioner of Social Security, which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.

42 U.S.C. § 405(b)(1). The terms of the statute require that the ALJ discuss the evidence relied upon in his conclusion, as well as provide a reasoned explanation as to why he found Claimant not to be disabled. The Fifth Circuit has held that in order to allow meaningful review at step three, the ALJ should identify the listed impairment for which the Claimant's symptoms fail to qualify and then provide an explanation as to how he reached the conclusion that Claimant's

9

symptoms are insufficiently severe to meet any listed impairment. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Where the ALJ offers "nothing to support her conclusion at this step, '. . . [the] reviewing court, simply cannot tell whether the decision is based on substantial evidence or not.'" *Audler*, 501 F.3d at 448 (quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)).

The undersigned finds that the ALJ erred because he failed to identify the listed impairment or to provide an adequate explanation for how the impairment was not met. The Commissioner concedes in its response that the ALJ erred in this regard. The Court must now assess whether this error was harmless. *See Audler*, 501 F.3d at 448. Fifth Circuit precedent does not require perfection in administrative proceedings, and the court "will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

Claimant asserts that the medical evidence demonstrates that his disability meets the Social Security Administration's Listing of Impairments criteria regarding disorders of the spine, which as relevant to this case, require:

> osteoarthritis, degenerative disc disease . . . [w]ith [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04. Claimant submitted two consultative examination reports from Dr. Wright, who diagnosed Claimant with osteoarthritis and degenerative disc disease. Dr. Wright's reports note a limited range of spinal motion, but he did

not find evidence of motor loss or atrophy. (Tr. 318–320, 346–47). Furthermore, Dr. Wright's 2003 examination report shows evidence of a positive straight-leg raising test, but his subsequent 2005 examination report indicates a normal straight-leg raising test. (Tr. 319, 347). The Claimant also submitted two diagnostic documents from Dr. Chevis. These documents indicate Claimant suffered from symptoms of nerve root compression, including a positive straight-leg raising test. Dr. Chevis concluded that these findings met the applicable listing requirements under § 1.04. (Tr. 147, 356).

The only evidence that Claimant satisfies all of the requirements of § 1.04 is contained in the forms completed by Dr. Chevis, which, as discussed above, the ALJ properly decided to afford less weight. Although the record shows some evidence favorable to Claimant's assertion, the Court "may not reweigh the evidence in the record, nor try any issues *de novo*, nor substitute our judgment for the [Commissioner]'s, even if the evidence preponderates against the [Commissioner]'s decision." *Harrell v. Brown*, 862 F.2d 471, 475 (5th Cir. 1988); *see also* 42 U.S.C. § 405(g) (stating that the findings by the Commissioner, if supported by substantial evidence, shall be conclusive). In light of the fact that Dr. Chevis' findings and conclusions have been discounted and that Dr. Wright's conclusions do not rise to the level of a listed impairment, the ALJ's error was harmless and did not affect Claimant's substantive rights.

## **RECOMMENDATION**

Upon consideration of the pleadings, documents, and evidence offered by the parties in support of their arguments, the record of the proceedings below, and the controlling law, the undersigned is of the opinion that the final decision rendered by the Commissioner is supported

by substantial evidence and is in accord with relevant legal standards. Accordingly, the undersigned recommends that the decision of the Commissioner be affirmed, and that Oddo's motion to reverse, or in the alternative to remand, should be denied.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1, any party who objects to this Recommendation must, within fourteen (14) days after being served a copy of the Recommendation, serve and file with the Clerk of Court his written objections to the Recommendation, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. A party filing objections must identify specifically those findings, conclusions, and recommendations to which objection are being made; the District Court need not consider frivolous, conclusive or general objections. A party's failure to file objections to the proposed findings, conclusions, and recommendation contained in this report shall bar that party from a *de novo* determination by the District Court. A party who fails to file written objections to the proposed findings, conclusions, and Recommendation within fourteen (14) days after being served with a copy, shall be barred, except upon the grounds of plain error, from attacking on appeal any proposed factual finding and legal conclusion accepted by the District Court to which the party did not object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SO ORDERED this the 29th day of July 2010.

*/s/ Robert H. Walker*
UNITED STATES MAGISTRATE JUDGE